# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **THOMAS "T.J." CIARAMETARO,** | |
| **Plaintiff,** | |
| **v.** | **CIVIL ACTION NO. 1:21-cv-10606-WGY** |
| **SEFATIA ROMEO THEKEN, et al.,** | |
| **Defendants.** | |

## PLAINTIFF THOMAS CIARAMETARO'S OPPOSITION TO DEFENDANTS'[1] MOTION FOR PROTECTIVE ORDER REQUEST TO DEFENDANTS FOR THE PRODUCTION OF DOCUMENTS

## I.    INTRODUCTION

Plaintiff Thomas Ciarametaro opposes the defendants' motion for a blanket protective order on all the plaintiff's discovery, and provides the following in support.

## II.    BACKGROUND

The defendants, unsurprisingly, did not disclose the entirety of this sordid tail to this Honorable Court. Instead, they relied on their usual tactic of cherry picking the parts of the story that they believe benefit their argument and suppressing the facts they dislike; whilst delaying the process as much as possible. The below timeline is included in support of the plaintiff's motion in order to demonstrate to the Court what the plaintiff is up against and how less transparency will only benefit the defendants herein.

---

[1] The motion for protective order, ECF No. 26, was filed by Defendants Charles "Chip" Payson, individually and as Gloucester's City Solicitor, James Destino, as Gloucester's former Chief Administrative Officer (CAO), Holly Dougwillow, individually and as Gloucester's Human Resources Director, and the City of Gloucester, but Defendant Sefatia Romeo Theken, individually and as Mayor of Gloucester, has not filed her own motion for a protective order or joined the other Defendants. *See id*.

A.      **Relevant Timeline**

1. <u>November 6, 2020:</u> Plaintiff submits a Hostile Work Environment Complaint with the City of Gloucester Human Resources (HR) Department, alleging that Defendants Sefatia Romeo Theken and Charles "Chip" Payson violated the City's Anti-Harassment and Discrimination Prevention Policy.  *See* copy of Report (redacted) attached hereto as Exhibit 1, at ¶ I.

2. <u>November 10, 2020:</u> Plaintiff received a memorandum from the City's HR Director, Defendant Holly Dougwillow, which stated that the "City's investigation into your allegations has been assigned to MIIA (Massachusetts Interlocal Insurance Association) and assigned claim number . . .."  Copy of memorandum attached hereto as Exhibit 2.

3. The City's Anti-Harassment and Discrimination Prevention Policy provides:

   > Within 15 business days of the complaint being filed (or the matter being referred to the HR Director), the HR Director or the other person conducting the investigation will conclude the investigation and submit a written report of his or her findings to the Mayor and Chief Administrative Officer.

   ECF 27-2 at 7, ¶ 5 (copy attached in support of Defendants' motion).

4. <u>December 9, 2020:</u> Plaintiff, by and through his Undersigned Counsel, eventually reached out to MIIA after hearing nothing in response from the City and/or its insurer, for over a month, after the plaintiff submitted his complaint.  *See* copy of emails between Undersigned Counsel and MIIA attached hereto as Exhibit 3, at 3.

5. <u>December 9, 2020:</u> Defendant Payson notified the plaintiff that he was no longer permitted to work overtime details for the Harbormaster's Office.

6. <u>December 10, 2020:</u> MIIA responded to Undersigned Counsel's initial message, and Undersigned Counsel requested additional information, specifically what the timeline was for MIIA to conduct an investigation.  Undersigned Counsel never heard from MIIA again.

7. <u>December 11, 2020:</u> Undersigned Counsel notified MIIA that Defendants Payson and Dougwillow, by and through Defendant Sefatia Romeo Theken, again retaliated against the plaintiff by denying his ability to conduct details which are available to him in accordance with Massachusetts Law and the Gloucester Ordinance.

8. <u>January 6, 2021:</u> Undersigned Counsel again attempted to receive information from MIIA on the investigation into his client's complaint.  MIIA never responded.

9. <u>January 26, 2021:</u> Defendant Sefatia Romeo Theken "convened a meeting with [the interim CAO, HR Director] Dougwillow, [GPD] Chief Conley, and Mr. Ciarametaro

under the guise of wanting to address work related matters but there appears to be no dispute that the topic of conversation included the subject of Mr. Ciarametaro' s complaint." Exhibit 1 at 34.  During this meeting, the plaintiff repeatedly stated that he was represented by counsel and was uncomfortable with the discussion. *See id.* At 34-35.[2]

10. <u>January 27, 2021:</u> Undersigned Counsel emailed the City's purported outside counsel, Attorney Thomas Mullen, copying the members of the City Council, in order to report the meeting from the previous day and to seek information on what the status of the investigation was:

> The City of Gloucester's Hostile Work Environment Policy is clear, and the City has completely violated its own policy in order to protect its Mayor. The City has failed to investigate the claim in accordance with its own policy; rather, it didn't investigate it at all. Instead, she has continued trying to seek her revenge against one of our most loyal public safety servants (and disabled veteran). This is not the first time, nor the second time I have made the City aware of her attempts to repudiate and intimidate against T.J. since filing his hostile work environment complaint (your municipal insurer was notified on two other occasions). I have yet to hear back. I have yet to hear anything from the City or its insurer regarding his hostile work environment complaint, submitted nearly three months ago (the City's policy mandates that an investigation be completed in 15-days).

Copy of email attached hereto as Exhibit 4, at 2.

11. <u>January 27, 2021:</u> Undersigned Counsel received a reply to the above email by the City's HR Director, Defendant Dougwillow, who stated:

> This is to advise you that the City of Gloucester has engaged the services of Attorney Regina Ryan, Discrimination and Harassment Solutions, LLC, to investigate the allegations of workplace harassment and retaliation made against the City of Gloucester and various City officials by your client, the Gloucester Harbormaster, Thomas Ciarametaro.  You may expect to hear from Attorney Ryan shortly.

*Id.* at 1.

---

[2] "Mayor Theken' s decision to address the issues of Mr. Ciarametaro's complaint in the presence of other City employees, after he had indicated that he was represented by counsel, constitutes a breach of the Anti-Harassment and Discrimination Prevention Policy with regards to confidentiality.  Moreover, Mayor Theken' s decision to blindside Mr. Ciarametaro about these confidential matters in the presence of his colleagues was upsetting to him and retaliatory for his filing the complaint in violation of said policy."  Exhibit 1 at 34-35.

12. January 28, 2021: Attorney Thomas Mullen emailed the Gloucester City Council in response to Undersigned Counsel's email from the previous day, in which he stated the following:

> First, the suggestion that the City has done nothing in response to the HR complaint filed by the harbormaster is simply not true. Immediately after receiving it, it was reviewed by General Counsel Payson and myself. We determined, in conjunction with Ms. Dougwillo of the HR department, that the complaint warranted a thorough investigation by an experienced, independent professional. Ms. Dougwillo sent it to the City's insurer, the Massachusetts lntermunicipal [*sic*] Insurance. Association ("MIIA"), in the hope that they would pay for an outside investigator. MIIA reviewed the complaint and had its outside counsel, Atty. John Davis of Pierce, Davis & Perritano, do the same. MIIA and Atty. Davis recommended that Atty. Regina Ryan be retained for the job. The City has signed a contract with her to do that. Far from ignoring the harbormaster's complaint, the City is treating it with great seriousness.

Copy of email attached hereto as Exhibit 5.

However, Attorney Mullen's use of the past tense in describing how the City was handling the plaintiff's complaint, is more than generous.  In fact, the City did not retain Regina Ryan until January 28, 2021, *see* copy of DHS's Engagement Letter attached hereto as Exhibit 6, did not send her a copy of Mr. Ciarametaro's complaint until January 27, 2021, *see* copy of email attached hereto as Exhibit 7 (email sent exactly one minute before the HR Director emailed Undersigned Counsel to notify him that DHS had been retained).

Nearly six (6) months pass as DHS conducted its internal investigation:

13. June 11, 2021: Undersigned Counsel emails Attorney Mullen, requesting a copy of DHS's report on the plaintiff's complaint.

14. June 17, 2021: Attorney Mullen finally responds to Undersigned Counsel and informed the same that he would review the report and respond by June 21, 2021, now relying on the timelines in the same policy that the City violated as discusses *supra* at ¶¶ 3, 10, and 12, *see* copy of email attached hereto as Exhibit 8 at 2 (by citing the five (5) day period the City had to respond), and notifying the plaintiff that he was "standing in for the HR Director," *id*.

15. June 18, 2021: Attorney Mullen again refuses to provide the plaintiff, or his counsel, with a copy of the report; rather, Attorney Mullen offered to meet with him to go over his summaries of the report.  Considering Attorney Mullen was purporting to be serving as "outside counsel to the City," *id*. at 1, contemporaneous with him "standing in for the HR Director," *id.* at 2, the plaintiff had no reason to meet with him despite the fact that the

"City asked [Attorney Mullen] to review the report and convey the information that, in the ordinary course, would be conveyed by the HR Director." *id.* at 1.

16. <u>June 22, 2021:</u> Defendant Sefatia Romeo Theken announces the report's purported findings on Facebook. Oddly, her Facebook post states, "No Legal Violations Found . . . no legal wrongdoing associated with the mayor . . . evidence did not support any legal violations by the mayor . . .." Copy of posts and memorandums attached hereto as Exhibit 9. "The outside investigator shared a general summary after a thorough process and found that the evidence did not support any legal violations by the mayor."

Apparently a forty-one (41) page report is a general summary, but she further states "[s]ummaries of the findings by the investigator are being released . . .." What Defendant Sefatia Romeo Theken fails to disclose, is that the purported summaries she included in her Facebook post were not the summaries of the investigator; rather they were summaries that the City's purported Outside Counsel and "fill-in HR Director" Thomas Mullen drafted.

17. <u>June 30, 2021:</u> The Gloucester Daily Times ("GD Times") submitted a Public Records Request (PRR) with the City of Gloucester, specifically requesting a copy of the full investigation report done by Discrimination and Harassment Solutions, LLC, ("DHS") on behalf of the city, subsequent to various complaints filed against Defendants in the above captioned matter. *See* ECF No. 27-3.

18. <u>July 19, 2021:</u> The City responded to the GD Time's PRR, claiming that the reports were exempt from the Public Records Law, as the reports were "'clearly 'disciplinary reports' and as such fall into the category of 'personnel … files or information.'" Copy of Commonwealth of Massachusetts, Secretary of the Commonwealth, Public Records Division (the "Secretary") Decision No. SPR21/1863 dated August 11, 2021, attached hereto as Exhibit 10 at 2.

19. <u>July 28, 2021:</u> The GDT filed an appeal of the City's response with the Secretary. *See id.*

20. <u>August 11, 2021:</u> The Secretary issued its determination, holding that the exemption the City relied on was improper, in that it "does not protect all data relating to specifically names individuals," *id.*, and that "a balancing test which provides that where the public interest substantially outweighs the seriousness of any invasion of privacy, the privacy interest must yield." *Id.* citing *People for the Ethical Treatment of Animals (PETA) v. Dep't of Agric. Res.*, 477 Mass. 280, 291 (2017). Further the Secretary determined that the public has a recognized interest in knowing whether public servants are carrying out their duties in a law-abiding and efficient manner, *id.,* and ordered the City to provide GDT with a response to its PRR.

21. <u>August 13, 2021:</u> The City responded to GDT's PRR, as a consequence of the Secretary's determination, which provided the GDT with redacted copies of the reports, further:

These fall into two categories. First, in the interest of avoiding personal embarrassment and reputational damage to third parties who were mentioned in the reports, the names and other identifying information about such third parties have been deleted. Second, certain matters concerning the Mayor which a person of normal sensibilities would find embarrassing, and with respect to which the public's interest in disclosure does not outweigh such emba1Tassment, have also been redacted. The second category consists chiefly of strong language which the Mayor is alleged to have used. Attorney Ryan's conclusion that the Mayor used profanity in violation of the City's policies is fully disclosed and should satisfy the public's interest on this point; detailing every instance of such language would add nothing of substance.

Copy of Defendants' August 13, 2021, response is attached hereto as Exhibit 11.

22. August 17, 2021: GDT submitted another appeal, based on the City's August 13, 2021, purported response to its PRR.  GDT's Editor-in-Chief David Olson stated the following:

> The [August 13, 2021] response, however, does not meet the [Secretary's] order. It is highly redacted, with the names of third parties and exhibits entirely removed. The city has also redacted language used by the mayor to prevent 'embarrassment' . . .. The mayor, as an elected official, has no privacy interest in this matter. The citizens who elected her have the right to read the report in full and judge her conduct for themselves.

ECF 27-3 at 4 (copy of GDT article included as an exhibit to the defendants' memorandum in support of its motion for a protective order).[3]

23. August 23, 2021: Plaintiff, by and through his Undersigned Counsel, serves a copy of the Notice of Deposition Duces Tecum and Subpoena for Regina Ryan, on all counsel of record, see ECF No. 27-1.  DHS accepted service of the subpoena and agreed on a document production date of September 24, 2021.

24. August 31, 2021: The City informed the Secretary that it intended on providing a subsequent response to the GDT, and the Secretary issued its determination which gave the City ten (10) days to respond, which it purportedly did on the same day:

> Consistent with the aforementioned statute and subclause (c), certain limited redactions have been made in the exhibits in order to protect "personnel ... or information and any other materials or data relating to a specifically named individual, the disclosure of which may constitute an unwarranted invasion of personal privacy . . ..

Copy of the Secretary's Decision No. SPR21/2087 dated August 31, 2021, attached hereto as Exhibit 11.

---

[3] Both Attorneys Mullen and Defendant Payson were involved in representing the City's interests in denying the GDT's PRRs.  See id.

25. <u>September 17, 2021:</u> Defendant Sefatia Romeo Theken's deposition was noticed for September 29, 2021.

26. <u>September 23, 2021</u>: At 4:49 p.m., Counsel for Defendant Sefatia Romeo Theken emailed Undersigned Counsel, notifying him that the defendants are objecting to the production by DHS, and requesting confidentiality.  *See* ECF No. 27-4 at 5.

    Undersigned Counsel responded to Attorney Kesten, informing him that his decision to wait one month, and not until the 11th hour to object to the DHS subpoena, made it crystal clear that this was just more of the defendants' dilatory obfuscation tactics designed to prevent the plaintiff from exercising his legal remedies (this time discovery).  *See id.* at 4.

27. <u>September 24, 2021:</u> DHS requested a telephone conference with all of the attorneys to be held at 4:00 p.m. on the date of production, Friday, September 24, 2021.  *See id.* at 3.

    Undersigned Counsel responded to for DHS and counsel of record in the above captioned matter and stated:

    > I made my position crystal clear yesterday. I cannot imagine there is anything more to discuss, especially at the 59th minute of the 11th hour before production is due. There is no purpose for this conversation, other than for the defendants to attempt to delay and obstruct discovery in this case. I am available at 4 o'clock, but don't interpret this as any indication that my position will change, because it will not.

    Copy of email attached hereto as Exhibit 12.  Defendants failed to include this email as an exhibit to its relevant motion herein; despite, its inclusion of the other email correspondence.  *Compare* ECF No. 27-4 *with* Exhibit 12.

28. <u>September 24, 2021:</u> DHS complied with the subpoena, and provided a disclosure as further discussed below.

29. <u>September 25, 2021:</u> On Saturday, two (2) business days before Defendant Sefatia Romeo Theken was noticed to be deposed by the plaintiff, and over one (1) week after her deposition was noticed, her counsel emailed Undersigned Counsel in order to notify him that "we will have to reschedule the deposition," Copy of relevant emails attached as Exhibit 13 at 4, but Attorney Kesten provided no reasoning for his last minute request.  In fact, it took numerous emails and two more days for Attorney Kesten to notify Undersigned Counsel that he was scheduled to be in Court that day, see id. at 1 (email sent on Monday, September 27, 2021, at 3:42 p.m., in regard to deposition noticed for Wednesday morning, *see id.*

**B.      The Reports**

Pursuant to the subpoena duces tecum served on her, Ms. Regina Ryan, she produced

various records, including Findings of Facts., Conclusions and Recommendations from the

following three investigations she conducted:

1. Investigation of a Complaint Against Sefatia Romeo Theken and Charles Payson
   brought by Thomas Ciarametaro, Jr., and exhibits  ("Ciarametaro Report");

2. Investigation of a Complaint Against Sefatia Romeo Theken by Jill Cahill, and
   exhibits ("Cahill Report");

3. Investigation of a Complaint Against Sefatia Romeo Theken by Former Employee
   Donna Leete, and exhibits (Leete Report");

4. Ms. Ryan's interview notes (over 15 interviews, collectively over sixty (60) pages);
   and

5. Various emails.

Defendants seek a blanket protective order to be issued by this Court, for the same purported

reasons they denied the GD Time's PRR, to "avoid causing unnecessary embarrassment to third

parties unrelated to this action."  ECF No. 27 at 2, *see also* Exhibits 10 and 11.  The majority of

the defendants' redactions of Mr. Ciarametaro' s report, *see* Exhibit 1, are individuals' names

which are almost entirely made up of City Officials (elected or appointed), with the rare

exception.  Most of the names redacted are the names of the defendants herein: Destino,

Dougwillow, and Payson.  Defendants argue that if the report was made public, it would cause

unnecessary embarrassment to third parties, which may be true in an extremely limited number

of the redactions the defendants have made within the report; but, clearly based on the redacted

content, this is not the defendants overarching concern.  The defendants are not trying to protect

third parties from embarrassment; rather they are doing everything in their power to avoid

Defendant Sefatia Romeo Theken from being embarrassed.[4]  Plaintiff agrees that the identity of third parties[5] should be protected, but the content, or the statements/alleged statements made by the defendants in this action should not be.  Allegations and admissions that Defendant Sefatia Romeo Theken repeatedly referred to the same two City Officials, amongst other City employees and officials, as "little bitch" and "little asshole," or threatening employees with "bitch slaps," should not be protected.  Furthermore, allegations[6] that Defendant Sefatia Romeo Theken "frequently used [whore and slut] when referring to" certain individuals, *see* Exhibit 1 at 12, or the other alleged terrible things she said about two specific individuals who likely have no connection with the above caption matter, in relation to their personal lives, should only be protected as much as necessary to protect the subject's identity, not protect the defendants by not disclosing their alleged conduct.  With the subject's identity protected, there will be no risk of embarrassment for third parties that are unrelated to this action.  Defendant was alleged to have said other truly disgusting things about other City Officials and members of the community, and the plaintiff agrees that these alleged statements would unnecessarily embarrass certain people who have no connection with the above captioned matter.  Plaintiff has had the documents that DHS disclosed to him in accordance with the subpoena for more than two weeks, and he has no intention of releasing any information that would be able to be used to identify any innocent third-party who was allegedly the subject of Defendant Sefatia Romeo Theken's tirades.  However, the alleged statements themselves should not be protected.  One of the redactions in Mr. Ciarametaro' s report provides:  "[Defendant Destino] remembers 'running into' Arthur

---

[4] Defendant Sefatia Romeo Theken is seeking reelection as Gloucester's Mayor on November 2, 2021, another fact the defendants failed to mention in their motion seeking a blanket protective order on the plaintiff, and only the plaintiff.

[5] Not the third-parties which the defendants redacted, as the names of the defendants in this matter or other City Officials' names who materially connected with the above captioned matter should not be protected, but only true third-parties.'

[6] These specific allegations were corroborated by three City Officials, all of which who DHS found credible.

Sawyer who is 'head of the Massachusetts Lobsters Union.'" Exhibit 1 at 14 (from the unredacted version not included herein).  These are facts which relate to the First Amended Complaint, *see* ¶¶ 25-28, which are completely relevant and could not reasonably cause embarrassment to a third [party, but may be disfavored from disclosure by the defendants, especially when they are not substantiated by one another, such as Defendant Payson who "has learned that Defendant Destino] was having convo's [*sic*] with Sawyer."  Exhibit 1 at 14 (from the unredacted version not included herein).

Defendants want to have their cake and eat it too.  Since the outset, the defendants have attempted to control the timing and narrative about the subject matter of the above captioned matter for one reason: to protect themselves.  Defendants now want this Court to issue a blanket protective order on the plaintiff, arguing third party (defined extremely loosely) embarrassment.  However, Defendants have not hesitated in releasing information if they believe it will help them.  Why was the Harbormaster's Office employee's name included by Defendants before Defendant Sefatia Romeo Theken blasted it all over Facebook?  *See* Exhibit 9 at 5 ¶ d.  Is she not a third party?  Defendant Sefatia Romeo Theken has known all along that the contents of DHS's reports would be public, and she even stated to her counsel that "maybe someone 'should leak this out to the times,'" *see* email dated June 9, 2014, from Defendant Sefatia Romeo Theken to Attorneys Kesten, Mullen, and Payson at Exhibit 14.  Five (5) days later, at 6:25 a.m., on the morning that DHS' reports were submitted to the City, Defendant Sefatia Romeo Theken forwarded the aforementioned email to DHS from her personal email account.  *See id.* at 1.  The defendants cannot use a protective order as their shield when its only relevant purpose herein is to act as a shield to true third parties; which is not the defendants' actual intent.

### III.    ARGUMENT

The District Court may "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," Fed. R. Civ. P. 26(c), but the court's finding of good cause must be based on "a particular factual demonstration of potential harm, not conclusory statements." *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 7 (1st Cir. 1986), citing 8 Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 2035 (1970). Moreover, in determining whether to grant a protective order, Courts must balance "the importance of disclosure to the nonmovant and the potential harm to the party seeking the protective order." *Calhoun v. City of Chicago*, 273 F.R.D. 421, 422 (N.D. Ill. 2011). "Factors that determine whether good cause exists include privacy interests, whether the information is important to public health and safety and whether the party benefitting from the confidentiality of the protective order is a public official." *Id.* In making this evaluation, generally "the fact that public officials are involved in the incident weighs in favor of disclosure." *Perez v. City of Fresno*, 519 F. Supp. 3d 718, 723 (E.D. Cal. 2021). This is because, "[t]he public interest in the conduct of public officials, elected and appointed, [often] outweighs" the potential harm to the party seeking the protective order. *Hawley v. Hall*, 131 F.R.D. 578, 585 (D. Nev. 1990); *see Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 (3d Cir. 1994) ("privacy interests are diminished when the party seeking protection is a public person subject to legitimate public scrutiny"). Finally, "[t]he mere fact that some level of discomfort, or even embarrassment, may result from the dissemination of [the discoverable information] is not in and of itself sufficient to establish good cause to support the issuance of protective order." *Flaherty v. Seroussi*, 209 F.R.D. 295, 299 (N.D.N.Y. 2001)

## A.      Defendants have not established good cause for the protective order

Defendants have yet to make a particularized showing of good cause with respect to any individual document produced by Ryan.  Defendants never moved to quash the subpoena served on Ryan, nor did they move for a Protective Order to otherwise deny or limit Plaintiff's discovery or disclosure of same, prior to production.  Defendants only assertions for why a protective order is warranted "is to avoid personal embarrassment and reputational damage to third parties who were mentioned in the reports," ECF No. 27 at 3, and "to protect third-party individuals not subject to this lawsuit and/or plaintiff's allegations from annoyance or embarrassment," *id*. at 4-5.  By failing to make any "particular factual demonstration of potential harm, [but rather only providing] conclusory statements," *Anderson v. Cryovac, Inc.*, 805 F.2d at 7, Defendant failed to demonstrate good cause, thus the Protective Orders are unconstitutional, *see id.* (a specific and particular finding of good cause by the district court is a constitutional mandate in order for the Court to protect First Amendment concerns) citing *Seattle Times Company v. Rhinehart*, 467 U.S. 20, 37 (1984) (First Amendment is offended when pretrial discovery protective order enters without requisite showing of good cause).  Defendant made no initial showing, merely averred conclusory and attenuated statements, and likewise made no effort to present particular reasons why good cause existed to deny the public access, waiving his right to restrict future use.  Defendants seek a blanket protective order issued against the plaintiff only,[7] which would mandate that the plaintiff "maintain confidentiality regarding the information and materials obtained in pretrial discovery and further prohibiting the dissemination of such information and materials."  ECF 27-5.  Defendants' hypocrisy cannot be overstated, as they seek this Court to issue a blanket protective order which applies to all "information and materials

---

[7] Defendants' hypocrisy cannot be overstated, as they move herein for a blanket protective order to be issued against the plaintiff, and the plaintiff alone.  *See* ECF No. 27-5.

obtained in pretrial discovery," which would only pertain to the plaintiff in this matter!

> **B.     Defendants are public officials and the issues are matters of public concern.**

Here, the defendants' have evinced no concern for third parties; rather, their primary concern is to ensure that nothing is made public before the November 4, 2021 City of Gloucester Municipal Election. *See Gutierrez v. Benavides*, 292 F.R.D. 401, 404 (S.D. Tex. 2013) ("privacy interests are diminished when the party seeking protection is a public person subject to legitimate public scrutiny").  The public has a substantial and legitimate interest in this case, which calls into question "the integrity, or lack thereof, of those who serve in public office." *Id.*; *see Flake v. Arpaio*, 2016 WL 4095831, at *4-5 (D. Ariz. Aug. 2, 2016) (holding the public's interest in the information justifies its release where litigation involves "elected officials and the performance of their governmental responsibilities" and the defendant "invited media attention . . . by repeatedly publicizing" it).  However, the defendants seek a protective order on everything:

> 'Blanket' protective orders extend[] broad protection to all documents produced . . . without a showing of good cause for confidentiality as to any individual documents. Although blanket protective orders may be useful in expediting the flow of pretrial discovery materials, they are by nature overinclusive and are, therefore, peculiarly subject to later modification.

*Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 790 (1st Cir. 1988). *See United States v. Kravetz*, 706 F.3d 47, 61-62 (1st Cir. 2013) (Privacy rights of third parties are common law exceptions to the presumptive right of access of judicial records).

## IV.     CONCLUSION

Plaintiff opposes the defendants' motion for a blanket protective order on the plaintiff's discovery for all the reasons as set forth herein, as the defendants have not made a showing of good cause and clearly only intend on using the proposed protective order to further its own interests to the detriment of the plaintiff, and others.

Respectfully submitted,

**THOMAS "T.J." CIARAMETARO**,

By his attorney,
*/s/ Liam T. O'Connell*
Liam T. O'Connell, BBO # 694477
Farrell Smith O'Connell
46 Middle Street, Second Floor,
Gloucester, MA 01930
(978) 309-9243
(978) 231-8303
loconnell@fsofirm.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the above document was served upon the attorneys of record by the ECF system on October 12, 2021.

*/s/ Liam O'Connell*
Liam O'Connell

14